FILED

04/17/2026

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 25, 2026 Session

## STATE OF TENNESSEE v. JOSEPH MCDOWELL

**Appeal from the Criminal Court for Hamilton County**
No. 314222   Barry A. Steelman, Judge

_____

**No. E2024-01932-CCA-R3-CD**

_____

The defendant, Joseph McDowell, was convicted by a Hamilton County jury of two counts of sexual battery by an authority figure. The trial court imposed a sentence of six years' incarceration in the first count and six years' probation in the second count, to be served consecutively. On appeal, the defendant argues that the trial court erred in 1) denying his motion to exclude his statements concerning his sexuality and 2) ordering his sentences be served consecutively. Following a thorough review of the record, the briefs, and oral arguments of the parties, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Joshua V. Lehde, Public Defender Fellow, Tennessee District Public Defenders Conference (on appeal); and David W. MacNeill (at trial), Chattanooga, Tennessee, for the appellant, Joseph E. McDowell.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Coty Wamp, District Attorney General; and Stephani Brown and Miller Leonard, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

The defendant was indicted for two counts of sexual battery by an authority figure based on allegations of inappropriate sexual contact with his adopted, teenage son, T.M.,[1] who had autism and epilepsy.

Prior to trial, the defendant filed a motion in limine to exclude evidence of his sexuality. In his motion, the defendant argued that pursuant to Tennessee Rules of Evidence 404(a) and (b), as well as this Court's opinion in *State v. Tizard*, 897 S.W.2d 732 (Tenn. Crim. App. 1994), the trial court should exclude any evidence that he was "homosexual, bi-sexual, or any reference whatsoever to . . . [his] sexual proclivities[.]" Acknowledging his "admissions that he has a sexual propensity toward male partners," the defendant asserted that there was "no way to disengage" his "purported homosexuality from it being properly regarded as propensity evidence."

The trial court conducted a hearing on the motion. The defendant argued that his admissions during his interview with the police of having a "preference for . . . male sexual partners" should be excluded as "propensity evidence that is used for the purpose of proving action and conformity therewith on a given occasion." The State asserted that the defendant's admissions were necessary to "prove the defendant's intent and motive with the touching[.]" After taking time to consider the issue, the trial court denied the defendant's motion. The court distinguished *Tizard* from the present case, determining that the circumstantial evidence bearing on the *Tizard* defendant's sexuality "was not rationally related to the issue of the defendant's criminal intent." The court found the defendant's statement about his sexuality was different than the circumstantial evidence of the *Tizard* defendant's sexuality because the defendant's statement was an unprompted response to an open-ended question by the detective. The court determined that intent was at issue in the defendant's case, the defendant's statement was relevant to intent, and the balance between probative value and unfair prejudice was "not tipped in favor of the defendant." The court reiterated that "the probative value [was] at least of equal value to any prejudice" and not "outweighed by the danger of unfair prejudice."

The case proceeded to trial with the State's proof showing that the defendant sexually abused the victim on at least two separate occasions. Once, the defendant touched the victim's erect penis over the victim's clothing, and another time, the defendant forced the victim to touch the defendant's penis with the victim's hand. The defendant's theory of defense at trial was that any touching was not for purposes of sexual gratification.

The victim's disclosure of the abuse began in August of 2022 when the victim's mother asked Fred Bennett, a friend of the victim's family and retired minister, to take the victim to lunch to discuss the victim's treatment of his sisters. At the lunch, the victim

---

[1] It is the policy of this Court to refer to minor victims by their initials.

"open[ly]" and "calm[ly]" responded to questions concerning the victim's getting angry with his sisters and received Mr. Bennett's advice in dealing with "typical brother/sister thing[s]." However, when Mr. Bennett asked the victim, "Does anybody else violate your privacy," the victim "immediately started . . . rocking back in his chair and shaking his hands . . . and he got really upset[.]" Surprised and concerned by the victim's reaction, Mr. Bennett suggested that the victim talk to his mother about whatever made him agitated rather than press the victim for information.

Later that afternoon after returning from his outing with Mr. Bennett, the victim "nervous[ly]" entered the kitchen where his mother was cleaning and asked if she would come into his room to talk. The victim was "[v]ery nervous, very agitated" when he disclosed some things to his mother that caused her concern. In response to what she learned, the victim's mother arranged for the victim and his sisters to stay at a friend's house that evening so she could confront the defendant.

When the defendant came home from work, the victim's mother told him that they needed to discuss something the victim had disclosed to her. However, she "left out a couple of details" to assess "the accuracy of what [the defendant] had to say." The defendant admitted to a variety of inappropriate conduct and described details the victim's mother had omitted. The defendant said that "he would walk in on [the victim] when he was in the shower and watch him in the shower" and would also "watch[] [the victim] when he would change his clothes." The defendant said that he "taught [the victim] to masturbate and that he knew that it was wrong[.]" He did so because the defendant "was curious." The defendant elaborated to the victim's mother that "he first showed [the victim] with his fingers and then showed [the victim] on . . . [the defendant's] own body." The defendant also said that "he had touched [the victim] on multiple occasions in his bedroom and other places." The defendant admitted that on more than one occasion he would have the victim "sit on his lap and that he would touch [the victim's] genitals until [the victim] got [an erection]." The defendant admitted that he knew his actions were wrong.

The victim's mother asked the defendant "to write down what he was telling [her]," which was the process they used "whenever [they] needed to resolve conflict within the marriage." The defendant wrote down his various inappropriate actions, including an admission that "[o]n more than one occasion I have touched [the victim's] penis when it was hard out of curiosity." The defendant described his various actions as "inappropriate" or "cross[ing] a line."

The Department of Children's Services became involved, and the victim eventually went to the local child advocacy center for a forensic interview. The victim became visibly upset during the interview when asked to talk about the defendant and, in response, wrote on a piece of paper that "[h]e's done stuff that is not okay." The victim used an anatomical

drawing to indicate that the defendant had touched his penis over his underwear on more than one occasion. The victim said the defendant "made him feel uncomfortable when he touched it." Using the drawing, the victim also indicated that the defendant made him touch the defendant's penis with his hand while the defendant was wearing only his boxers.

Sergeant Johnny Massengale with the East Ridge Police Department brought the defendant in for questioning. Before talking with the defendant, Sergeant Massengale advised the defendant of his rights, and the defendant signed a form indicating a waiver of those rights. During the subsequent interview, the defendant identified the letter he had written for the victim's mother and said that what he wrote in the letter was the truth. Sergeant Massengale asked the defendant, "What made you decide to do that?" The defendant responded, "I've known that I was bisexual for my whole life. And honestly, . . . I do have an attraction to younger kids, like, like teenage, not even like young young[.]" The defendant told Sergeant Massengale that he never did anything to the victim under his clothing but admitted he knew that what happened was wrong.

At trial, the victim expressed that the defendant "touched me where I didn't want to be touched" and that it happened "[m]ore than on[c]e." The victim said that the defendant used his hands to touch him and would come into the bathroom while he was showering. The victim also recalled a time the defendant showed him the part of his body used for "[g]oing to the bathroom . . . [number] [o]ne."

The defendant testified on his own behalf at trial. The defendant clarified that the statement in his letter to the victim's mother about showing the victim how to masturbate "on [him]self" referred to his doing a demonstration on his own finger, not his penis. As to his statement in the letter about "cross[ing] a line," the defendant explained that meant "I didn't do a good job of explaining [masturbation] to him. . . . I didn't know I was making him so uncomfortable." The defendant denied that his actions were for his own sexual gratification. As to his statement about "touch[ing] [the victim's] penis when it was hard out of curiosity," the defendant explained that he was "curious as to whether this was becoming a problem or if he just needed new clothes. . . . I was curious about why he was touching himself." The defendant claimed that any admission in his letter about touching the victim's penis referred to the defendant's "very stupid, but kind of like . . . guys tapping each other on the crotch" while engaging in horseplay. However, the defendant admitted on cross-examination that he had accidentally grazed the victim's penis when they were sitting on the couch but said it was not for sexual gratification. The defendant denied the victim's claim from the forensic interview that the defendant had made the victim touch the defendant's penis. The defendant recalled telling Sergeant Massengale in his interview that he "had a sexual preference for male partners and, more specifically, . . . younger partners," but claimed he only did so because he "didn't want [his] wife or [the victim] thinking [he] was attracted to [the victim]."

- 4 -

Following the conclusion of the proof, the jury convicted the defendant of two counts of sexual battery by an authority figure as charged. Thereafter, the trial court conducted a sentencing hearing, after which, it imposed a six-year sentence of confinement in Count 1 with a consecutive six-year sentence suspended to probation in Count 2. The defendant appealed.

*Analysis*

The defendant insists the trial court erred in denying his motion to exclude his statements concerning his sexuality and attraction to teenagers because the statements constituted "impermissible propensity evidence under [Tennessee Rule of Evidence] 404(a)." The defendant also claims the trial court erred in imposing consecutive sentences because it "resulted in a total effective sentence that was longer than necessary to accomplish its purposes." The State responds that the trial court properly admitted the defendant's statement concerning his sexuality for purposes of establishing the defendant's intent to sexually assault his son and that the defendant waived any challenge to his statement concerning his attraction to teenagers. The State further responds that the trial court properly exercised its discretion in imposing consecutive sentences. As we will address below, we conclude that the trial court did not err in admitting the defendant's statements concerning his sexuality and attraction to teenagers or abuse its discretion in imposing consecutive sentences.

## I. Defendant's Statements

The defendant argues that the trial court erred in not excluding his statements concerning his sexuality and attraction to teenagers under Tennessee Rule of Evidence 404(a). The State attempts to parse the two portions of the defendant's challenged statement, asserting that the defendant waived any challenge to the portion of the statement "that he experiences attraction to teenagers" because "he did not move to exclude that comment in his motion in limine." We have reviewed the pertinent motion in limine and the transcript from the hearing related to the matter, as well as viewed the footage of the actual statement, and are unpersuaded by the State's attempted parsing. In our view, both aspects of the defendant's statement were fairly encompassed within his motion, especially considering that both aspects of the statement were made in the same breath without any interruption by the interviewing officer. Additionally, we note that in its responsive pleading to the defendant's motion for new trial, the State acknowledged the defendant's challenge to his "statement of his bisexual attraction, as well as his specific attraction to teens." Therefore, our analysis will consider both aspects of the statement in toto.

"Decisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion. Thus, reviewing courts will not disturb these decisions on appeal unless the trial court has abused its discretion." *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008) (citing *State v. Robinson*, 146 S.W.3d 469, 490 (Tenn. 2004)). Tennessee Rule of Evidence 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion[.]"

In *Tizard*, this Court held it was reversible error to admit testimony describing a sexually explicit book and videotapes of homosexual activity found in the defendant's possession and testimony that the defendant's roommates were bisexual. 897 S.W.2d at 743-45. This Court determined that the testimony led jurors to make inferences about the defendant's character, and there was a substantial risk the jury relied upon this propensity evidence regarding homosexuality to decide the issue of guilt. *Id.* at 744-45. This Court stated:

> [W]e do not tolerate the use of evidence merely showing a propensity or character trait in order to prove that an accused acted in conformity with the propensity or trait so as to commit a given offense or possessed the particular criminal intent which is required for that offense. Because we view the general inference of homosexuality to relate to propensity as used in this case, we conclude that the trial court erred by admitting into evidence the booklet, videotapes and the defendant's statement regarding his roommates.

*Id.*; *but see State v. Conner*, 2006 WL 3516215, at *3, *6 (Tenn. Crim. App. Dec. 5, 2006) (defendant's statement to police in which he admitted he was sexually attracted to males was admissible because it made his claim of mistakenly forgetting to zip his pants' fly before laying "spoon fashion" behind the victim less probable), *perm. app. denied* (Tenn. Apr. 23, 2007).

Despite the defendant's reliance, we view *Tizard* as distinguishable from the present case in a crucial regard. In *Tizard*, none of the challenged evidence "was shown to be directly connected to the events involving the victim[.]" *Tizard*, 897 S.W.2d at 743. Instead, there was a "general inference of homosexuality to relate to propensity[.]" *Id.* at 745. The "ultimate inference . . . i.e., the defendant's intent to commit a sexual battery upon the victim, must be derived from initial inferences about the defendant's character traits circumstantially drawn from the questioned evidence[.]" *Id.* at 744. This Court concluded that the evidence should have been excluded because its probative value was "greatly attenuated" and that the potential for prejudice outweighed its probative value under Tennessee Rule of Evidence 404(b). *Id.* at 744-45.

The instant case is more akin to the facts in *State v. Jennings*, No. CCA 247, 1989 WL 102500 (Tenn. Crim. App. Sept. 7, 1989), *no perm. app. filed.* In *Jennings*, the defendant, when confronted by the victim's father, "denied having had oral and anal sex with the victim" and stated, "[A]ll I was doing was teaching (*name omitted* ) how to masturbate, and he was asking normal sex questions. . . ." *Jennings*, 1989 WL 102500, at *2. The defendant was also questioned at trial about his sexual proclivities. In affirming the defendant's conviction, this Court held,

> Generally, evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith. However, as insisted by the State, this prohibition does not apply when the same evidence is offered for another purpose, such as to show motive or intent. *See* J. Wigmore, *Evidence in Trials at Common Law*, § 54.1, Vol. IA, at 1152. (P. Tiller's revision, 1983).

> In this case the triers of fact heard evidence of the appellant's explanation of his actions; that he was teaching his nephew how to masturbate. Inquiry, by cross-examination of the appellant, as to his condition of homosexuality was not improper for determining whether such "teaching" of the male child was for the purpose of accomplishing the alleged motive of the appellant of obtaining sexual arousal or gratification by sexual contact [T.C.A. § 39-2-602(10)].

> As found by the trial court, whether the appellant was homosexual was a relevant subject of cross-examination, especially where the appellant had previously acknowledged his homosexual tendencies to the investigating officer. The elicited evidence was relevant as to both intent and motive.

> In general, every declaration by the defendant, which is relevant to the issues involved in the trial, is admissible in evidence against him, if it shows his intent or motive for the crime charged, explains the character of his conduct, or serves to identify the author of the crime. C. Torcia, *Wharton's Criminal Evidence*, § 297, Vol. 2 (14th ed. 1986).

> Taken alone the evidence of the appellant's homosexuality does not bear directly or indirectly on the issue of his guilt or innocence. However, taken in connection with the other evidence presented, any reasonable and logical inferences from the evidence of the appellant's homosexuality became helpful in deciding the issue of guilt or innocence.

The evidentiary use of character for or against a defendant is better understood by separating the principles of *relevancy* from those of *undue prejudice.* Generally, in a criminal case, the state's evidence is prejudicial to a defendant's presumption of innocence. If the state offers irrelevant evidence, it should be excluded on proper objection. However, if relevant, evidence of a trait of character may be admitted if its probative value is found to outweigh any *undue* prejudice.

*Jennings*, 1989 WL 102500, at *3.

Here, the challenged evidence was not propensity evidence in the sense that it invited the jury to conclude that the defendant must be guilty because he was bisexual and attracted to teens. Instead, the challenged evidence was the defendant's direct response to the question, "What made you decide to do that," and explicitly connected him to the charged conduct with no inference required. The evidence was directly relevant to the defendant's intent and indicated that his actions were motivated by a desire for sexual gratification. The trial court, therefore, did not abuse its discretion in determining as such. Moreover, the trial court addressed the balancing test between probative value and prejudicial effect of the statement and determined that "the probative value [was] at least of equal value to any prejudice" and not "outweighed by the danger of unfair prejudice." Given the high, unattenuated probative value of the evidence, we discern no abuse of discretion in this determination.

## II.    Sentencing

The defendant argues that the trial court erred in imposing consecutive sentences because, while statutorily authorized to do so, resulted in a "total effective sentence . . . [that] was greater than necessary to accomplish the purpose of imposing a sentence."

This Court reviews consecutive sentences imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. *State v. Pollard*, 432 S.W.3d 851, 859-60 (Tenn. 2013). This means that the reviewing court will give "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)[.]" *Id.* at 861. When imposing consecutive sentences, the trial court must still consider the general sentencing principles that each sentence imposed shall be "justly deserved in relation to the seriousness of the offense," "no greater than that deserved for the offense committed," and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. §§ 40-35-102(1), -103(2), -103(4); *State v. Imfeld*, 70 S.W.3d 698, 708 (Tenn. 2002). "So long as a trial court properly articulates reasons for ordering consecutive sentences,

thereby providing a basis for meaningful appellate review, the sentences will be presumed reasonable and, absent an abuse of discretion, upheld on appeal." *Pollard*, 432 S.W.3d at 862 (citing Tenn. R. Crim. P. 32(c)(1); *State v. Bise*, 380 S.W.3d 682, 705 (Tenn. 2012)).

Tennessee Code Annotated section 40-35-115(b)(5) authorizes consecutive sentencing for an offender

> convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims[.]

After hearing the proof at the sentencing hearing, the trial court first noted that it was considering the principles of sentencing and relevant facts and circumstances in determining the defendant's sentence. In so doing, the court observed that this was "a serious offense," describing the defendant's behavior as "abhorrent . . . [and] deviant[,]" and "it makes it even more serious and aggravating that the child who he intentionally chose to perpetrate upon had limited emotional capacity and the ability to rationalize and understand." The court noted that the victim was presently hospitalized to receive treatment "for the traumatic impact that this whole process has had on him," which was indicative of the seriousness of the offense and counter to the defendant's claim of lack of serious bodily injury. The court observed the sentencing act's purpose of "fair and consistent treatment of all defendants" and the usefulness of "statistical information provided by the AOC." The court evaluated the enhancement and mitigating factors submitted by the parties, as well as the considerations pertinent to determining the manner of service of the sentence. Notably, the court determined that inconsistencies in what the defendant told the police and what he told the doctor who performed his psychosexual evaluation reflected poorly on the defendant's amenability to rehabilitation.

With regard to sentence alignment, the court found applicable the consecutive sentencing factor involving "two or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim," noting that "[h]ere, father upon son is significant to the [c]ourt." *See* Tenn. Code Ann. § 40-35-115(b)(5). The court ruled that the timespan of the defendant's undetected abuse, while not "a long time, . . . was not brief in any way, and it was a significant period of time[.]" The court highlighted that the residual mental damage to the victim "certainly has been established to be extreme." For these reasons, the court determined that "the sentences should run consecutively, one to another." However, the court suspended the second sentence to supervised probation, recognizing

that the defendant had no prior convictions and that the requirements of the sex offender registry would "make it safer for the public for him to be in the general public."

Here, the trial court meticulously applied the purposes and principles of the sentencing act in determining the defendant's sentence and articulated its reasons for the sentence imposed on the record. The trial court was aware of the defendant's lack of a criminal record and low risk of reoffending, and it took those points into consideration in suspending the defendant's second sentence to supervised probation. The trial court properly exercised its discretion, and the defendant is not entitled to relief.

### *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

s/ *J. ROSS DYER*
J. ROSS DYER, JUDGE